KENT S. ROBINSON, OSB #09625
Acting United States Attorney
District of Oregon
WILLIAM E. FITZGERALD, OSB #915151
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
bud.fitzgerald@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 09-CR-60021-01-HO |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | [Sentencing: 1/19/2010; 10:00 a.m.] |
| TEDDY ERNEST MAYFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned attorneys, Kent S. Robinson, Acting United States Attorney, District of Oregon, and William E. Fitzgerald, Assistant United States Attorney, hereby submits the following sentencing memorandum.

/////

/////

PAGE 1 - GOVERNMENT'S SENTENCING MEMORANDUM

On October 20, 2009, this Court accepted Defendant's guilty plea to Count One of a two-count indictment charging on or about June 13, 2008, in Lane County in the District of Oregon, Defendant knowingly served as an airman, to wit: operated an aircraft, without having an airman's certificate authorizing him to serve in that capacity, as said airman's certificate had been revoked, in violation of 49 U.S.C. § 46306(b)(7), and 14 C.F.R. § 61.3(a).

In exchange for Defendant's guilty plea, the United States has agreed to recommend acceptance of responsibility, a sentence at the low end of the guideline range and will not oppose a probationary sentence if Defendant qualifies. The parties will jointly recommend a fine in the amount of $2,000. The Government will move to dismiss Count Two after imposition of sentence.

Sentencing in this matter is set for 10:00 a.m. on January 19, 2010, in Eugene, Oregon, before the Honorable Michael R. Hogan, United States District Court Judge.

### A.  OFFENSE CONDUCT

According to the undisputed facts contained in the presentence report, on June 13, 2008, Teddy Ernest Mayfield unlawfully piloted an aircraft which departed from Eugene Airport in Eugene, Oregon, without communication or proper clearance from Air Traffic Control. Following this incident, Federal Aviation Administration (FAA)

inspectors determined that Mayfield was not licensed to fly and that he had a long history of FAA violations.

Soon after the unlawful flight, Mayfield told FAA inspectors that he was not alone in the plane and that another man, JH, may have been the pilot. Interviews with the plane's owner, JH and JH's employer revealed that JH was at work in Corvallis, Oregon at the time of the flight in question. On July 28, 2008, Mayfield admitted to investigators that he was alone in the aircraft during the flight in question.

A review of Mayfield's FAA file revealed that he first violated FAA regulations on July 14, 1967, when his student pilot certificate was revoked because he carried a passenger during flight. On February 23, 1972, he was granted an airman certificate. However, his medical certificate, required to maintain airman certification, was revoked on June 21, 1979, after he failed to disclose prior criminal convictions on his medical certificate application. His commercial pilot certificate was revoked on September 1, 1982, after he continued to violate aviation regulations. The certifications were never reinstated.

On February 16, 1994, his Parachute Rigger Certificate was revoked after he failed to properly pack and maintain two parachutes, resulting in two fatal skydiving accidents. Mayfield pled guilty to two counts of criminally negligent homicide in the Circuit Court for the State of Oregon, County of Yamhill, Case # CR 95036, and, on

May 18, 1995, received a sentence of 5 months in jail and 3 years of probation. He later violated probation by building ultra light aircraft without the court's permission.

Mayfield's application for a medical certificate was denied on July 21, 2004.

### Education and Vocational Skills

Mr. Mayfield graduated from Gresham Union High School, in Gresham, Oregon, in 1952. As previously noted, he is a former pilot and skydiving instructor. Reportedly, he has made over 8,000 skydiving jumps, has national medals for skydiving accuracy, and has been flying planes for approximately 50 years.

### Financial Condition (Ability to Pay)

Mayfield operated a parachuting school from 1972 to 1994. He is now retired. He receives $600 per month in social security benefits and $200 a month from his airplane storage services. His wife receives $745 per month in social security benefits. He relies on this income for living expenses.

The presentence report calculated a negative monthly cash flow for Mayfield of $285 per month. However, Defendant's total net worth is $926,231. Hence, Defendant could easily pay the recommended fine of $2,000.

### B. RELEVANT SENTENCING DECISIONS

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth

Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. 757. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to review by the Court of Appeals for "reasonableness." Id. at 769.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed.

A sentence within the guideline range accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The Government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

The Supreme Court has held that there is no rule which requires an "extraordinary circumstance" to justify a sentence outside the guideline range. Gall v. United States, 128 S. Ct. 586, 595 (2007). Nevertheless, the Court in Gall recognized

PAGE 5 - GOVERNMENT'S SENTENCING MEMORANDUM

that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentence decisions." Id. at 594. It is because of the "extensive empirical evidence" supporting the guidelines that the United States continues to recommend guideline sentences in all but extraordinary cases.

Even though the guidelines are advisory rather than mandatory, the district court must begin all sentencing proceedings by calculating the applicable guideline range. Id. at 596. While there is no presumption of unreasonableness that accompanies a sentence outside the guideline range, id. at 597, no sentence within the range will be reversed, absent an abuse of discretion. Id. at 596. See Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) ("District Courts must treat the Guidelines as 'the starting point and the initial benchmark'.").

In this case, no facts call for a departure or deviation from the guidelines. Therefore, the Government respectfully recommends that the Court sentence the defendant within the guideline range established by the following analysis.

### C. GUIDELINE ANALYSIS

The advisory guideline calculations are governed by the 2009 version of the United States Sentencing Guidelines Manual, hereinafter "U.S.S.G."

1. **Base Offense Level**

Under U.S.S.G. § 2B1.1(a)(2), Defendant's base offense level is 6.

2. **Acceptance of Responsibility**

Under U.S.S.G. §3 E1.1, Defendant is entitled to a 2-level reduction in offense level for acceptance of responsibility.

3. **Advisory Guideline Range**

A final offense level of 4, combined with Defendant's criminal history category of I, produces a guideline range of 0 to 6 months.

## RECOMMENDATIONS

The Government recommends a two-level reduction for substantial assistance, a sentence at the low end of the guideline range and does not object to probation if Defendant is eligible.  In light of Defendant's financial condition -- the presentence report computes a net worth of $926,231 -- the Court should find that Defendant has substantial ability to pay the jointly recommended fine of $2,000.

DATED this 13th  day of January, 2010.

Respectfully submitted,

KENT S. ROBINSON
Acting United States Attorney

/s/ William E. Fitzgerald
WILLIAM E. FITZGERALD
Assistant United States Attorney

PAGE 7 - GOVERNMENT'S SENTENCING MEMORANDUM